**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**
_____

VELETA A. VANCZA,

                                 Plaintiff,

            v.                                                                   1:21-CV-01262
                                                                               (GTS/CFH)

MARIST COLLEGE,

                                 Defendant.
_____

**APPEARANCES:**                                **OF COUNSEL:**

Law Office of Andrea L. Gamalski        ANDREA L. GAMLSKI, ESQ.
224 Fair Stret – Suite 4
P.O. Box 2814
Kingston, New York 12401
Attorneys for plaintiff

Bond Schoeneck & King, PLLC          NIHLA F. SIKKANDER, ESQ.
600 Third Avenue, 22nd Floor
New York, New York 10016
&
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**

**I. Background**

Plaintiff Veleta A. Vancza commenced this action on November 19, 2021. See Dkt. No. 1 ("Compl."). Plaintiff contends that defendant Marist College discriminated against her due to her disability, now known to be fibromyalgia, and terminated her for reporting the discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq. and the New York State Human Rights Law § 290, et seq. See

generally id. Plaintiff seeks "all compensatory, emotional, psychological and punitive damages, lost compensation, liquidated damages, pre- and post-judgment interest, and any other damages permitted by law," and attorney fees and costs. Id. at 9-10.

Presently before the Court is defendant Marist College's Motion to Compel a forensic examination of plaintiff's cellular phone. See Dkt. No. 35. Plaintiff opposed the motion. Dkt. No. 36.[1]

## II. **Arguments**[2]

Defendant argues that plaintiff has repeatedly failed to comply fully with its requests to "produce a complete and undeleted record of all relevant and material documents and communications, including text messages, by and between Plaintiff and former colleagues Melissa Halvorson and Radley Cramer concerning her claims in this litigation, and email correspondence with Ms. Halvorson and Mr. Cramer concerning the allegations in the Complaint." Dkt. No. 35-24 at 5. Defendant argues that although plaintiff's counsel "represent[s] that Plaintiff has produced all relevant communications and text messages between Ms. Halvorson and Plaintiff, and Mr. Cramer and Plaintiff, there is indication that texts have been deleted prior to production, as set forth in Exhibit 'S' and Exhibit 'T'" of defense counsel's affidavit. Id. at 5-6 (citing dkt. nos. 35-20, 35-

---

[1] Defendant filed a letter motion dated March 24, 2023, "in support of its request for an Order compelling Melissa Halvorson to comply with a subpoena issued on December 20, 2022, for her text messages with Plaintiff Veleta Vancza." Dkt. No. 37. Plaintiff's counsel responded to this letter motion on March 28, 2023. See Dkt. No 39. On March 30, 2023, plaintiff filed a status report. See Dkt. No. 40. On March 31, 2023, plaintiff responded to plaintiff's March 28 and March 30, 2023, letters. See Dkt. No. 42. The Court addressed this matter at a June 6, 2023, Court conference. Text Min. Entry. dated Apr. 6, 2023. It is the Court's recollection that defendant is not pursuing subpoenaing Ms. Halvorson, choosing instead to attempt to obtain the communications in question through the instant motion practice.
[2] The Court's citations to the parties' submissions refers to the pagination generated by the Court's electronic filing and management system, CM/ECF, which is located at the header of each page.

2

21).  Defendant argues that an "independent digital forensic expert is . . . necessary to recover missing information regarding Plaintiff's text messages and emails with key witnesses identified by plaintiff."  Id. at 6.  Defendant contends that the examination proposed is "limited in scope, and is designed to prevent disclosure of privileged communications."  Id.  Defendant asserts that plaintiff has refused any meet and confer regarding the matter.  See id. at 13-14.

Defendant argues that a forensic examination is "necessary, relevant and proportional to the needs of the case" because (1) plaintiff and Ms. Halvorson "testified that they referenced text messages they exchanged with each over in preparation for their depositions," (2) plaintiff "testified that she had discussed the incidents alleged in her Complaint via text messages with Ms. Halvorson contemporaneously," (3) Ms. Halvorson testified that "she exchanged text messages and emails with Plaintiff concerning her claims against Marist, and (4) plaintiff "testified that she regularly communicated with Mr. Cramer."  Dkt. No. 35-24 at 14-15.

Plaintiff argues that she has disclosed "over 3,000 pages of relevant cell phone text messages and emails within the Plaintiff's dominion and control" and has been extensively deposed.  Dkt. No. 36 at 4, 6.  Plaintiff highlights that she has already provided 2,500 pages of her text messages with Ms. Halvorson, asserting that there "can be no doubt that the Plaintiff has promptly and fully responded to all of the defendant's discovery demands."  Id.  Plaintiff avers that a forensic examination of her cellphone would be "a harsh and intrusive remedy, both burdensome and unduly prejudicial to the Plaintiff's claims."  Id. at 7.  Plaintiff contends that a forensic cellphone examination "only happens where a party is totally unresponsive to discovery

3

demands[,]" and that courts "generally require a showing that a party has failed to produce relevant information within their control[.]"  Id. at 7, 12.

Finally, plaintiff contends that using a third-party forensic expert "employed by the Defendant . . . in no way guarantees any safeguard with respect to [plaintiff's] privacy interests" as "[t]here may, or may not be things on that cell phone that the Plaintiff wants to keep private, having nothing to do with these claims, or the Defendant[.]"  Dkt. No. 36 at 15.

### III.  Legal Standards

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26(b)(1) provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).  Rule 37(a)(3)(b) provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection . . . if . . . a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."

> "Forensic examinations of computers and cell phones are generally considered a drastic discovery measure because of their intrusive nature." Stewart v. First Transit, Inc., Civ. No. 18-3768, 2019 WL 13027112, at *1 (E.D. Pa. Sept. 3, 2019) (quotations omitted); see also Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment ("Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to . . . electronically stored information is not meant to

>  create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances.

Aminov v. Berkshire Hathaway Guard Ins. Companies, No. 21-CV-479-DG-SJB, 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3, 2022).  Thus, some courts have stated that a Court "'must consider' the 'significant privacy and confidentiality concerns' implicated, including that the electronic information might 'contain confidential . . . private personal information that is wholly unrelated to the litigation.'" Stewart, 2019 WL 13027112, at *1 (quoting John B. v. Goetz, 531 F.3d 448, 460 (6th Cir. 2008) and citing FED. R. CIV. P. 34(a) Adv. Comm. Note (2006) ("Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. . . . Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.")."  Mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support an intrusive examination of the opposing party's electronic devices or information system." Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016) (internal quotes and citation omitted).

Some courts that have addressed this issue "suggest that a clear showing of discovery misconduct is needed to make a compelled forensic examination permissible." Johns v. Chemtech Servs., Inc., No. 20 C 7299, 2021 WL 4498651, at *3 (N.D. Ill. Aug. 27, 2021) (citing cases).  Yet, "'[i]t is well-settled that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive.'" Aminov, 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3, 2022) (quoting Schreiber v. Friedman, No. 15-CV-6861, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017)

5

(quotations omitted)). "'Courts have also ordered computer imaging when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials that are the subject of court orders.'" Id. (citing Schreiber, 2017 WL 11508067, at *5).

## IV.  **Analysis**

The examples defendant provides of what it believes to be "missing texts" are (1) what appear in plaintiff's disclosures as "empty" text message bubbles; (2) a large gap in time between text message exchanges; (3) references in other text message exchanges to a conversation missing from the provided texts; and (4) that "few if any email correspondences between Plaintiff and Mr. Cramer were produced, and none after Mr. Cramer left Marist College."  See Dkt. No. 35-20 at 3 (plaintiff stating that she "drunk texted Radley [Cramer]" and "complained about everyone"); Dkt. No. 35-21 (gap in texts between Dec. 8, 2020, and Sept. 2, 2021).  Plaintiff's opposition makes it difficult to understand her position on these alleged aberrations; she does not address what she believes was the cause or causes of the "blank" text messages or gaps in time.  See Dkt. No. 36.  Instead, she summarily concludes that all relevant text messages have already been overturned.  In Ms. Gamalski's declaration, in addressing defense counsel's communication stating that the text messages plaintiff provided were not responsive to their request, Ms. Gamalski states only "these were already produced in the 2,484 pages that were submitted on October 29, 2022."  Dkt. No. 36-1 at 3.

Defendant avers that courts have permitted forensic examinations of "electronic data" by an expert "in situations where there are inconsistencies in a plaintiff's discovery responses" or "when there is reason to believe that a litigant has tampered with the

6

computer or hidden relevant materials that are the subject of court orders." Dkt. No. 35-24 at 15 (citing Aminov v. Berkshire Hathaway Guard Ins. Companies, 21-CV-479 (DG/SJB), 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3, 2022); Schreiber v. Friedman, No. 15-CV-6861, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017)). Defendant further contends that it has proffered "protocols" that are sufficient to "protect any privileged materials that may exist on these devices" at "minimal burden to plaintiff." Dkt. No. 34-24 at 16.

Plaintiff argues that case law holds that forensic examinations are ordered only where a party has refused to produce any discovery or is "totally unresponsive" to demands. Dkt. No. 36 at 7. Plaintiff contends that courts also "generally require a showing that the party has failed to produce relevant information within their control before ordering an intrusive forensic examination." Id.

Admittedly, there appears to be few cases on point from within this Circuit. Although the out-of-circuit and state law cases plaintiff cites identify that a forensic examination is to be granted when the party has failed to comply with discovery obligations, these cases do not go so far as to hold that such failure must be a complete and intentional refusal to provide any of the relevant discovery. See Dkt. No. 36 (citing Timms v. LZM LLC, No. 15-20700, 657 F. App'x 228 (5th Cir. July 5, 2016)[3]; Tingle v. Herbert, 15-626 (JWD/EWD), 2018 WL 1726667 (M.D. La. Apr. 10, 2018); Landau v.

---

[3] It is not entirely accurate that in Timms, the plaintiff "refused to provide discovery responses at all, despite court orders turning over responsive cell phone texts and like evidence." Dkt. No. 36 at 12. In Timms, the plaintiff initially failed to produce text messages, and after defendant learned that plaintiff had access to text messages, plaintiff produced "paper copies of said text messages" but "the paper copies produced were missing at least two text messages Timms was known to have." Timms, 657 F. App'x at 229 n.1.

7

Lamas, No. 3:15-CV-1327, 2017 U.S. Dist. LEXIS 206158* (M.D. Pa. Dec. 15, 2017)[4]; Valdes v. Greater Naples Fire Rescue Dist., No. 2:17-Cv-417-FtM-29CM, 2018 U.S. Dist. LEXIS 152744, 2018 WL 4281472 (M.D. Fla. Sept. 7, 2018); Mujica v. Basco, 2015 CA Sup. Ct. Motions LEXIS 24589 (Sup. Ct. Ca. Sept. 8, 2015); Red Valve. Inc. v. Titan Valve, Inc., 18 CVS 1064, 2019 NCBC LEXIS 5 (N.C. Sup. Ct. Jan. 11, 2019)).[5]

For example, in Tingle, a case on which plaintiff relies, the Court, citing to NOLA Spice Designs, LLC v. Haydel Enterprises, Inc., Civ. A. No. 12-2515, 2013 WL 3974535 (E.D. La. Aug. 2, 2013), stated that "'mere skepticism that an opposing party has not produced all relevant information' and 'a mere desire to check that the opposition has been forthright in its discovery responses' are not sufficient reasons to warrant drastic discovery measures like an exhaustive computer forensic examination.'" Tingle, 2018 WL 1726667, at *6. The NOLA Spice court noted that "'courts have permitted restrained and orderly computer forensic examinations where the moving party has

---

[4] Plaintiff's description of Landeau does not address important distinguishing features. First, Landeau is factually distinct from this case in a significant way. Landeau was a section 1983 action commenced by an incarcerated inmate. The plaintiff sought to compel evidence regarding the defendant correction officer's social media use and access and "an array of information concerning: cell phones, computer and other internet accessible devices used by the defendants; phone and internet services providers used by the defendants; as well as social medial utilized by the defendants." The Court noted that the plaintiff sought "wholesale disclosure of social media content by, between and among the defendants for at least a seven-month period . . . and perhaps for as long as for years[.]" 2017 U.S. Dist. LEXIS 206158, at *5. Second, unlike here, where plaintiff and a nonparty admitted to using text messages and e-mail to communicate about plaintiff's claims, there, the relevant correction officer defendants, in their deposition testimony and in response to interrogatories, "denied discussing matters relating to the claims in this lawsuit in any social media" Id. at *4. Further, although plaintiff's brief notes that the Court denied the plaintiff's request that one defendant, Zong, be compelled to surrender her cell phone, it did permit related electronic discovery. In addressing the requests for social media access, the Court "granted [the plaintiff]'s unopposed request for information that would allow him to subpoena basic service provider information, deny these motions to compel to the extent they seek wholesale access to electronic social media, but prescribe a process or appropriately tailoring discovery in this field." Id. at *9. Importantly, the Court noted that "wide-ranging inmate requests for social media information relating to correctional staff" "must be approached with great caution, both to protect legitimate privacy interests and to avoid threats to institutional order, safety and security." Id. at *15-16.

[5] Whenever possible, for all future submissions, the undersigned requests that counsel for both parties provide the Westlaw citations to any unpublished cases they cite within their submissions.

8

demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means.'" Id. at *7 (quoting NOLA Spice, 2014 WL 3974535, at *3); see Diepenhorst v. City of Battle Creek, No. 1:05-CV-734, 2006 WL 1851243, at *2 (W.D. Mich. June 30, 2006) (holding that, to succeed on a motion to compel a computer forensic examination, the movant must demonstrate that the production was incomplete or inadequate; an electronic search of the computer could recover relevant materials; and that the forensic examination would be performed by a qualified and knowledgeable expert).

That the parties in those cases did not turn over any of the requested or ordered cellphone discovery does not create a rule by which a court can order a forensic examination only when a party has provided no discovery. Indeed, some courts have noted that a forensic exam may be ordered "even if that party has not intentionally withheld discoverable ESI: in particular, a third-party investigation may be appropriate when the non-moving party 'fails to initiate a reasonable process to search for, collect and produce responsive ESI.'" Johns, 2021 WL 4498651, at *1[6] (quoting Procaps S.A. v. Patheon, Inc., No. 12-24356, 2014 WL 11498061, at *3 (S.D. Fla. Dec. 30, 2014)). A requirement that there be no discovery overturned in order to order a forensic examination could lead to an absurd and unintended result: a party intentionally

---

[6] In Johns, the Northern District of Illinois denied a forensic examination where, as relevant here, the movant argued that the plaintiff "produced text messages but not completely, in that he has not produced text messages from the relevant time period (when Chemtech said he was using his cell phone during work hours) and has not produced video or photo attachments," "'complete messages'" and "'complete data' such as phone numbers of senders/recipients.'" Johns, 2021 WL 4498651, at *3. The Court concluded that the information that the plaintiff failed to produce, "i.e., 'complete' messages or phone data[,]'" was not "so central to the case that exceptional circumstances warrant[ed] a full forensic examination," and although the movant had "a slightly better argument as to photos and video attachments" that plaintiff failed to turn over, "the Court still sees the circumstances as less than exceptional under the case law." Id.

9

producing limited electronic discovery to avoid turning over other portions of electronic discovery that may be harmful to their claims.  However, even if the courts had reached such a strict holding, it is one this Court would decline to adopt.  Here, defendant contends that plaintiff has withheld portions of relevant discovery, and is falsely presenting those text messages and e-mails that have been produced as a complete disclosure.

The Court will separate defendant's request for a forensic examination in two categories: text messages and e-mails.  As for text messages, defendant has gone beyond "mere suspicion" or "speculation" that there may be missing text messages.  Further, unlike in cases where a connection to the relevance of the sought-after electronic data is "speculative" or "tenuous," here, plaintiff testified that she communicated with Ms. Halvorson through text messages and e-mails and with Mr. Cramer by e-mail about the matters underlying this case, and Ms. Halvorson confirmed this.  Dkt. No. 35-24 at 15 (citing Sikkander Aff. Exh. G at 20 [dkt. no. 35-8 at 3]).  Although plaintiff has produced substantial text message discovery, defendant has demonstrated what appears to be missing messages, for which plaintiff has offered no explanation.  This is concerning to the Court.

Whereas plaintiff addressed the points of defendant's argument specific to her testimony regarding using text messages or e-mails to communicate about matters related to plaintiff's claims in this case generally, dkt. no. 36 at 13-14, she does not at all address or offer any supported cause of defendant's concerns – including failing to address the provided examples – that specific texts or portions of conversations appear to be missing from the discovery already overturned.  Dkt. No. 35-20, 21.   Similarly, as

10

to the gap in text message communications with Mr. Cramer, plaintiff does not explain why she went from texting very regularly with Mr. Cramer to no communication for seven months in response to defendant's reasonable argument that communications may have been omitted.  See Dkt. No. 35-8 at 4.

After considering Rule 26(b)(1)'s proportionality factors, the Court finds that a limited proposed forensic examination is necessary and proportionate to the claims and defenses in this case, but that such examination must be more limited than that proposed.  See FED. R. CIV. P. 26(b)(1) (setting forth that the Court is to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").  Defendant has produced concerning evidence of potential discrepancies in the text messages plaintiff has thus far produced.  These discrepancies – which appear to be potential missing text messages or unexplained communication gaps – are troubling enough to the Court to warrant investigation.

In providing the proposed scope of the forensic examination, defendant seeks (1) "all text message communications between Plaintiff and Ms. Halvorson including deleted text messages (from 2016-to the present)"; (2) "all email, chat or other communications between Plaintiff and Ms. Halvorson from Veletamail@yahoo.com, Veezy@oldveezy.com, and Velta.Vacza@Marist.edu (from 2016-to the present) regarding discrimination, harassment and termination from employment at Marist College, and the lawsuit"; (3) "all text message communications between Plaintiff and Mr. Cramer including deleted text messages (from 2016-to the present)"; and (4) "all

11

email, chat or other communications between Plaintiff and Mr. Cramer from Veletamail@yahoo.com, Veezy@oldveezy.com, and Veleta.Vacza@Marist.edu (from 2016-to the present) concerning discrimination, harassment and termination from employment at Marist College, and the lawsuit." Dkt. No. 35-1 at 5; see also Dkt. No. 35-24 at 17 n.1. However, although defendant has requested "all text message communications" between plaintiff and Ms. Halvorson and between plaintiff and Mr. Cramer from 2016 to the present, defendant has not demonstrated that all text messages exchanged between plaintiff and Ms. Halvorson or Mr. Cramer from 2016 to the present – regardless of the messages' connection to the claims in this case – are relevant or proportionate to the needs of the case.

Defendant also does not demonstrate the proportional relevance of seeking text messages related "discrimination, harassment and termination from employment at Marist College, and the lawsuit" <u>unless</u> they have been deleted or omitted from production as such results would encompass production that defendant already has. Thus, the forensic examination will be limited to deleted text messages or text messages that, even if not deleted, were omitted from the text messages plaintiff already produced, and that relate to "discrimination, harassment, and termination from employment at Marist College and this lawsuit." Dkt. No. 35-1 at 5; <u>Genworth Fin. Wealthy Mgmt., Inc. v. McMullan</u>, 267 F.R.D. 443, 447 (D. Conn. 2010) (quoting <u>Ameriwood Indust., Inc. v. Liberman</u>, No. 4:06 CV 524–DJS, 2006 WL 3825291, at *3, 6 (E.D.Mo. Dec. 27, 2006), <u>amended by</u> 2007 WL 685623 (E.D.Mo. Feb. 23, 2007) (noting that "[A court has previously] declined to allow the examination of any ESI <u>other than the information that had been deleted</u> because the requesting party had not

demonstrated that the producing party was unwilling to produce relevant evidence."[7]) (citing <u>Antioch Co. v. Scrapbook Borders, Inc.</u>, 210 F.R.D. 645, 653 n.7 (D. Minn. 2002) (emphasis added)); <u>Univ. of Mississippi Med. Ctr. v. Sullivan</u>, No.319CV00459CWRLGI, 2021 WL 5414114, at *2 (S.D. Miss. Apr. 21, 2021) (allowing for "a limited forensic examination to search for the missing texts on Dr. Sullivan's electronic devices, which include text messages exchanged between Dr. Sullivan and Mr. Robinson . . . for the . . . time periods in which there appear to be gaps in what has been produced to date" but declining a search of any additional text messages or personal devices). Accordingly, the Court concludes that a limited forensic examination specific to (1) any deleted text messages from 2016 to the present between plaintiff and Ms. Halvorson and between plaintiff and Mr. Cramer concerning plaintiff's claims of discrimination, harassment, and termination from employment at Marist College and this lawsuit; and (2) text messages from 2016 to the present between plaintiff and Ms. Halvorson and between plaintiff and Mr. Cramer concerning plaintiff's claims of discrimination, harassment, and termination from employment at Marist College and this lawsuit, which, although not deleted, were omitted from production.[8]

As for the requests as it relates to e-mails between plaintiff and Ms. Halvorson and plaintiff and Mr. Cramer, defendant argues that a forensic examination is warranted because plaintiff "testified that she regularly communicated with Mr. Cramer" and "Ms. Halvorson . . . testified that she exchanged text messages and emails with Plaintiff

---

[7] The Court concluded that the defendants, the nonmoving party, had "the responsibility of producing computer information that they have access to and, although the Plaintiff doubts the Defendants' accountability, we conclude that there has not been a showing that the Defendants are unwilling to produce relevant evidence, that has not been deleted from their computer equipment." <u>Antioch Co. v. Scrapbook Borders, Inc.</u>, 210 F.R.D. 645, 653 n.7 (D. Minn. 2002).
[8] The forensic examiner can be provided with copies of the produced text messages to limit the results the forensic examiner produces to only those text messages deleted or not otherwise overturned.

concerning her claims against Marist." Dkt. No. 35-24 at 15. Defendant notes that plaintiff "failed to produce any email communication with Ms. Halvorson from the three email accounts to which Ms. Halvorson testified that she used to communicate with Plaintiff concerning the claims in this case" and "few if any email correspondences with Plaintiff and Mr. Cramer were produced, and none after Mr. Cramer left Marist College." Dkt. No. 35-24 at 15-16.

Although defendant has produced sufficient evidence plausibly suggesting that text messages may have been deleted or withheld, its claim with respect to plaintiff's e-mails is far weaker. Defendant argues that plaintiff and Ms. Halvorson have testified to communicating through e-mail about the matters underlying the complaint, yet plaintiff produced "only a handful of emails . . . between Plaintiff and Ms. Halvorson and Mr. Cramer." Dkt. No. 35-24 at 7, 10. However, defendant proffers nothing to suggest that there exist more relevant e-mails. Moreover, beyond referencing plaintiff's testimony that she "communicated" with Mr. Cramer about the matters underlying this case, defendant produces no argument or evidence that the communications between plaintiff and Mr. Cramer were through e-mail. Indeed, it does not appear that there is any testimony from plaintiff contending that she e-mailed with Ms. Halvorson or Mr. Cramer about the matters underlying this case. That plaintiff testified to "communicating" with Ms. Halvorson and Mr. Cramer, and that Ms. Halvorson testified to e-mailing with plaintiff, fails to raise anything more than a suspicion of concealment of <u>relevant</u> e-mails, and, as such, these are not of the type of specific claims sufficient to warrant a forensic investigation. <u>See</u>, <u>e.g.</u>, <u>Hespe</u>, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016). Further, defendant contends that "inconsistencies in a plaintiff's discovery responses"

14

warrant forensic examination of the e-mails, but defendant offers no evidence of inconsistencies, only that plaintiff did not turn over "any e-mail communications" with Ms. Halvorson and "few" with Mr. Cramer.  Dkt. No. 35-24 at 15-16.

Defendant contends that, because it "descries potentially relevant documents in the possession of a party that the party has not produced in a case . . . , a court may compel the party to produce the described documents."  Dkt. No. 35-24 at 14.  However, this truism says nothing about the needs and proportionality of such discovery in the specified context of a forensic examination.  The cases that have addressed this issue have found similar claims to be too tenuous and sweeping to warrant forensic investigation.  As defendant has not provided specific evidence that plaintiff communicated with Ms. Halvorson and Mr. Cramer about the subject matter underlying this lawsuit or the lawsuit itself by e-mail, it has not met its burden of demonstrating an extraordinary need warranting forensic examination of plaintiff's e-mails with Mr. Halvorson and Mr. Cramer, and the motion is denied in that respect.

The Court "wants to ensure complete production of all relevant requested documents in this case while concomitantly protecting [plaintiff']s privacy as to the personal matters on her phone.  Because [defendant] has made a strong showing that additional relevant text messages . . . may be recovered from [plaintiff]'s phone, forensic examination is appropriate in this case."  Measured Wealth Private Client Grp., LLP v. Foster, 20-cv-80148, 2021 WL 1215218, at *2 (S.D. Fl. Mar. 31, 2021).  Thus, the Court next addresses "how to conduct the forensic examination . . . to 'guard against undue intrusiveness and account properly for the significant privacy and confidentiality concerns that may be present.'" Zimmer, Inc. v. Stryker Corp., No. 3:14-CV-152-JD-

CAN, 2015 WL 13700949, at *3 (N.D. Ind. May 11, 2015) (quoting Audio Visual Innovations, Inc. v. Burgdolf, No. 13-10372, 2014 WL 505565, at *2 (E.D. Mich. Feb. 3, 2014) and citing Genworth Fin. Wealth Mgmt., Inc. v. McMullan, No. 07 CIV 022IRODF, 2007 WL 1468889, at *3 (S.D.N.Y. May, 18, 2007) (additional internal citation omitted)).

Unlike in some cases where the Court has denied a request for a forensic examination, due at least in part to a lack of measures to address the non-movant's privacy, here, defendant has proposed several protocols that are "appropriately tailored to protect [the] [plaintiff's] privacy concerns" and impose minimal burden on plaintiff. Univ. of Mississippi Med. Ctr. v. Sullivan, No. 3:19-CV-00459CWRLGI, 2021 WL 5414114, at *2 (S.D. Miss. Apr. 21, 2021) (citing Hardy v. UPS Ground Freight, Inc., 2019 WL 3290346, at 3-4 (D. Mass. July 22, 2019) (noting that the District of Massachusetts "denied a motion to compel seeking denied a motion to compel seeking a forensic examination of plaintiff's personal cell phone on the grounds that such an examination threatened to sweep in plaintiff's private information and that the motion contained no proposed protocol "appropriately tailored to protect [plaintiff's] privacy concerns."); see dkt. nos. 35-1 at 8 ¶25 (noting that defendant's proposed "option 2" for data extraction from plaintiff's cell phone "would take a few hours but less than one day," 35-14, 35-15, 35-16, 35-22, 35-23.

The Court concludes that defendant's proposal for how it would approach the forensic examination through use of Avalon, combined with the parties' mutually agreeing to search terms – including in the search only text messages between plaintiff and Mr. Cramer or Ms. Halvorson to avoid any privileged communications – and allowing plaintiff to review and object to the results based on privilege largely addresses

concerns about plaintiff's personal or attorney-client privileged communications being revealed to defendant. To further ensure that plaintiff's concerns are met, the Court will permit plaintiff to offer an alternate forensic expert should she object to Avalon, and the Court will make ultimate determination on appointment. The Court concludes that defendant's suggested protocols and the layered protections set forth by the Court, herein and below, along with the narrowed and limited scope of the search, sufficiently ensure that plaintiff's concerns regarding privacy and attorney-client confidentiality will be adequately addressed.

### IV. **Conclusion**

**WHEREFORE**, it is hereby **ORDERED**, that defendant Marist College's motion to compel the forensic examination of plaintiff's cellular phone, Dkt. No. 35, is **GRANTED IN PART**[9]:

(1) Within five (5) days from the date of this Memorandum-Decision & Order, plaintiff is to advise the Court whether it agrees to have Avalon Legal serve as the forensic examiner. If plaintiff does not agree, within fourteen (14) days from the date of this Memorandum-Decision & Order, plaintiff is to submit to the Court her choice of an expert forensic examiner, along with the examiner's methodology for examining mobile devices and sufficient information about the company and specific forensic examiner for the Court to make an assessment, after which the Court will thereafter choose between these competing options and appoint such an expert forensic examiner, and once such

---

[9] In setting forth the parameters in the wherefore clause, the Court has been guided, in part, by the wherefore clause in Measured Wealth Private Client Grp., LLC v. Foster, 20-cv-80148, 2021 WL 1215218, at *304 (S.D. Fl. Mar. 31, 2021).

examiner is appointed, plaintiff shall make her cellular phone available for forensic examination without undue delay;

(2) Within fourteen (14) days from the filing date of this Memorandum-Decision & Order, parties are to meet and confer to agree on search terms.  If the parties cannot agree, each party is to submit its recommendation to the Court within fourteen (14) days from the meet and confer, along with their reasoning for why certain terms are disputed, and the Court will select the search terms.  As parties' have the best knowledge of the case and agreement to terms is strongly encouraged, the Court's selection of search terms will be a last resort.  If, after meeting with the chosen expert, it is determined that additional or different search terms will be needed, the parties are to meet and confer again to agree on alternate or additional search terms.  If parties prefer to await choosing search terms until selecting and communicating with the forensic expert, they will be so permitted as long as the search terms are promptly chosen, yet parties are to advise the Court as to their approach to the search terms within fourteen (14) days from the filing date of this Decision & Order;

(3) Any information uncovered during this search that may be protected by the attorney-client privilege will not amount to waiver of the attorney-client privilege;

(4) The forensic examiner, once chosen, will sign a confidentiality agreement.  Within fourteen (14) days from the appointment of a forensic examiner, parties will meet and confer to draft a confidentiality agreement that, in sum and substance, agrees that any information reviewed will not be disclosed in any form to any person or entity excepting the communications between plaintiff and Ms. Halvorson and plaintiff and Mr. Cramer, which will be provided to the parties and the Court as set forth infra;

(5) In performing the forensic examination, the forensic examiner will present only text message communications exchanged between plaintiff and Ms. Halvorson and between plaintiff and Mr. Cramer from 2016 to the present that involve plaintiff's alleged discrimination, harassment, and termination of employment at Marist College and this lawsuit, specifically those text messages that were deleted or omitted from production[10];

(6) Upon completion of the search, the forensic examiner will provide to the Court[11] and to plaintiff (a) all relevant search results, and (b) a signed affidavit detaining the steps he or she took to search plaintiff's device and acquire the search results; and (c) if mirror imaging of the cellular phone is required, following the completion of the search and extraction of materials that meet the search term requirements and timeframe, the forensic examiner will retain the mirror image of plaintiff's cellular phone until the conclusion of this lawsuit unless ordered otherwise by the Court, and will destroy the mirror image and all records of the forensic examination following the conclusion of the lawsuit and any potential appeal;

(7) Plaintiff's counsel, within thirty (3) days of receiving the results from the forensic examiner, is to advise the Court and defendant whether she has any reasonable privilege-based objections to producing any portion of the results to defendant: if privilege-based objections are had, plaintiff will (a) provide the Court and defendant with a detailed privilege log that complies with the Local Laws and a memorandum of law addressing and supporting her arguments as to privilege, after which the Court will

---

[10] To satisfy the requirement of providing text messages that may have been omitted from production, parties are to timely supply the forensic examiner with the text message production that plaintiff has already provided such that the forensic examiner can compare the results and isolate those messages that were responsive but not produced.

[11] The intention behind obtaining a copy for the Court is to assuage any concern defendant may have that plaintiff could alter the results. The Court will not review this initial submission unless plaintiff raises privilege claims and an in camera review becomes necessary.

perform an in camera review, and (b) produce to defendant all remaining, non-objectionable results; and if no reasonable privileged-based objections are had, plaintiff's counsel is to turn over to defendant the full results of the forensic examination, along with the forensic examiner's affidavit, within thirty (30) days of receiving the results;

(8) defendant will be responsible for all costs and fees associated with retaining the independent forensic examiner at this time, excepting any costs or fees associated with plaintiff's own review of the results; however, if the forensic examination reveals that plaintiff's device contains communications that are responsive to defendant's prior requests for production, and such communications could have been reasonably disclosed through the course of discovery without the need for the forensic examination, the Court will revisit the question of costs and fees and will entertain arguments from defendant to shift all or part of the fees and costs of the independent forensic examination to plaintiff as well as consideration of sanctions, if appropriate, see Fed. R. Civ. P. 27;

(9) plaintiff is required to maintain the cellular phone at issue from the date of this Order until the completion of the forensic examination and shall not delete or otherwise alter any text messages that fall within the confines of this Decision & Order or otherwise have a connection to this case, and it is further

**ORDERED**, that the Motion to Compel, Dkt. No. 35, is otherwise **DENIED**.

Dated: July 20, 2023
     Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge