**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VELETA A. VANCZA,

                              Plaintiff,

             v.                                          1:21-CV-01262
                                                         (GTS/CFH)

MARIST COLLEGE,

                              Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

Law Office of Andrea L. Gamalski          ANDREA L. GAMALSKI, ESQ.
P.O. Box 2814
728 Broadway
Kingston, New York 12402
Attorneys for plaintiff

Bond Schoeneck & King, PLLC               REBECCA K. KIMURA, ESQ.
600 Third Avenue, 22nd Floor
New York, New York 10016
&
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER

Presently pending before the Court is defendant Marist College's motion for

sanctions pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37.  See Dkt.

No. 60.  Defendant seeks "discovery sanctions to Plaintiff, Veleta A. Vancza and/or her

attorney, including but not limited to, shifting the cost of the forensic examination and

associated attorney's fees and costs on Plaintiff and/or her attorney, ordering a negative

inference at trial and/or dismissing Plaintiff's claims."  Dkt. No. 60 at 1.  Plaintiff

opposed.  See Dkt. No. 62.  Defendant replied.  See Dkt. No. 64.

## I. **Background**

Familiarity with the facts and issues underlying this case is presumed; thus, the

Court will repeat the relevant facts herein only as necessary to review the instant

motion.

## II. **Legal Standards & Precedent**

"Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable

litigation."  West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

> A party has a duty to preserve evidence when it has "notice that the
> evidence is relevant to litigation, or should have known that the evidence
> might be relevant to future litigation".  Fujitsu v. Fed. Exp. Corp., 247 F.3d
> 423, 426 (2d Cir. 2001). The duty to preserve extends to "any documents
> or tangible things (as defined by Rule 34(a)) . . . 'likely to have discoverable
> information that the disclosing party may use to support its claims or
> defenses'". Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 217 (S.D.N.Y.
> 2003) (citations omitted) (the parties "must not destroy unique, relevant
> evidence that might be useful to an adversary").

Aktas v. JMC Dev. Co., 877 F. Supp. 2d 1, 12-13 (N.D.N.Y. 2012), aff'd, 563 F. App'x

79 (2d Cir. 2014).  "Rule 37 of the Federal Rule of Civil Procedure permits a district

court to impose a range of sanctions upon a party for failing to obey a discovery order.

FED. R. CIV. P. 37(b)(2)(A)."  Morin v. Tormey, No. 5:07-CV-517, 2010 WL 2771826, at

*3 (N.D.N.Y. Apr. 29, 2010), modified on reconsideration on other grounds, No. 5:07-

CV-517, 2010 WL 2775870 (N.D.N.Y. July 13, 2010).  However, a court can impose

sanctions even without a violation of a discovery order.  See Residential Funding Corp.

v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002).

> A party seeking sanctions based on the destruction . . . of evidence must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107 (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001)). "The party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence." Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008).

Oliver v. New York State Police, No. 1:15-CV-0444 (BKS/DJS), 2019 WL 1915215, at

*3-4 (N.D.N.Y. Apr. 30, 2019), aff'd, 2020 WL 8614640 (N.D.N.Y. Mar. 13, 2020).

"If a party has an obligation to preserve evidence but does not, the degree of the

party's culpability and the amount of prejudice caused by its actions will determine the

severity of sanctions to be imposed." Matthews v. New York State Dep't of Corr. &

Cmty. Supervision, No. 9:17-CV-503, 2023 WL 2664418, at *6 (N.D.N.Y. Mar. 28, 2023)

(quoting Bryant v. JMC Development Corp., 887 F. Supp. 2d.1, 12 (N.D.N.Y. 2012);

Aktas, 877 F. Supp. 2d at 12.

> The Second Circuit has held that the "culpable state of mind" factor is satisfied by a showing that the evidence was destroyed "knowingly, even if without intent to (breach a duty to preserve it), or negligently". Pastorello v. City of New York, 2003 WL 1740606, at *10 (S.D.N.Y.2003) (citing Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 109 (2d Cir. 2001)). Simple or ordinary negligence is, "a sufficiently culpable 'state of mind' for the purposes of spoliation". Wade, 686 F.Supp.2d at 194 (the plaintiff's expert had thirty years of experience as a fire investigator and should have known that other experts would be inspecting the RV). A party acts with negligence when he makes diligent efforts to document damage in anticipation of a lawsuit but fails to take reasonable precautions to preserve the evidence. Id. at 195. Nevertheless, a property owner is not required to retain property that is in a negligent condition for an indefinite period of time. Townes, 2003 WL 22861921, at *4.

Aktas, 877 F. Supp. 2d 1, 13-14; see also Schwarz v. FedEx Kinko's Office, No. 08 Civ.

6486 (THK), 2009 WL 3459217 at *7 (S.D.N.Y. Oct. 27, 2009) (noting that courts in the

3

Second Circuit have held that "a 'culpable state of mind' ranges from willful destruction in bad faith to simple negligence.") (citation omitted).

> Pursuant to Rule 37(e),[1] Plaintiffs must show that Defendants "acted with the intent to deprive [Plaintiff] of the information's use in the litigation" before the sanctions listed in subsection (2) of Rule 37(e)—i.e., adverse inference, dismissal, or default judgment—are available. Fed. R. Civ. P. 37(e)(2). Absent a showing of "intent to deprive," Plaintiffs' relief is limited to sanctions under subsection (1) of Rule 37(e). Fed. R. Civ. P. 37(e)(2).

Rothman v. City of New York, No. 19-CV-225 (CM) (OTW), 2019 WL 6210815, at *3 (S.D.N.Y. Nov. 21, 2019).

"The most severe of the sanctions permitted by Rule 37 for a disobedient party are dismissal and entry of default, and such sanctions should be ordered 'only when the district judge has considered lesser alternatives.'" Shibata v. Swingle, No. 3:16-CV-1349 (BKS/DEP), 2018 WL 4522053, at *2 (N.D.N.Y. May 9, 2018), report and recommendation adopted, 2018 WL 4895847 (N.D.N.Y. Oct. 9, 2018) (quoting S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010)); see also Morin, 2010 WL 277826, at *3 (considering the "most severe of sanctions" to include "preclusion or dismissal"). When considering the severest of sanctions, the Court is required to consider:

> (1) the non-disclosing party's explanation for the failure to comply with the Federal Rules, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party of having to prepare to meet the new evidence, and (4) the possibility of a continuance. See Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006).

---

[1]  Rule 37(e) states, "If electronically stored information that should have been preserved in the anticipation of conduct of litigation is lost and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information as unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

> Although a finding of the non-disclosing party's bad faith is not required in order to impose sanctions under Rule 37, it is a factor that may be considered as part of the non-disclosing party's explanation for its failure to comply. See Design Strategy, Inc., 469 F.3d at 296.

Robinson v. Purcell Constr. Corp., No. 09-CV-1209 (GTS/TWD), 2012 WL 13172941, at

*2 (N.D.N.Y. Nov. 13, 2012).

> In lieu of, or in addition to the sanctions listed in Rule 37(b)(2)(A), the court can assess attorneys fees and reasonable expenses, unless the court finds that the failure to obey the order was substantially justified or other circumstances make the award of expenses unjust. FED. R. CIV. P. 37(b)(2)(C). Similarly, Rule 16(f) provides, that if a party or attorney fails to obey a scheduling or other pretrial order, the court, on motion or on its own, "may issue any just orders" including those authorized by Rule 37(b)(2)(A), and/or may impose attorneys fees and costs under essentially the same standards as Rule 37(b)(2)(C). FED. R. CIV. P. 16(f).

> The imposition of sanctions under Rule 37 is within the discretion of the court.[2] See, e.g., Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d. Cir.1994). In deciding whether to impose sanctions under Rule 37, the court considers the following factors: "(1) the willfulness of the noncompliant party or the reasons for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the noncompliant party had been warned of the consequences of his noncompliance." Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y.2002) (citing Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995)).

Morin v. Tormey, No. 5:07-CV-517, 2010 WL 2771826, at *2-3 (N.D.N.Y. Apr. 29, 2010),

modified on reconsideration on other grounds, No. 5:07-CV-517, 2010 WL 2775870

(N.D.N.Y. July 13, 2010).

> However, a court should exercise this enormous power with restraint and upon the finding of bad faith or where abusive litigation practices are evident. DLC Mgmt. Corp., 163 F.3d at 136; see also Sanders v. City of New York, 218 F. Supp. 2d 538, 542-43 (S.D.N.Y. 2002) (citing Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 267 (2d Cir. 1999) for the

---

[2] "Magistrate Judges may impose monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders, subject to review by a district court under a 'clearly erroneous or contrary to law' standard." Morin, 2010 WL 2771826, at *3 n.6 (N.D.N.Y. Apr. 29, 2010), modified on reconsideration on other grounds, No. 5:07-CV-517, 2010 WL 2775870 (N.D.N.Y. July 13, 2010) (quoting Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990)).

proposition that when a court exercises its inherent power to impose sanctions for the discovery abuse of spoliation, neither bad faith nor intentional misconduct is necessary).

La Grande v. Bros., No. 1:04-CV-1020 (GLS/RFT), 2007 WL 9772730, at *5 (N.D.N.Y. Oct. 5, 2007), report and recommendation adopted sub nom. La Grande v. Hannaford Bros., No. 04-CV-1020 (GLS/RFT), 2008 WL 11505438 (N.D.N.Y. Mar. 20, 2008).

## II.  Arguments

### A.  Defendant's Arguments

Defendant argues that sanctions are warranted because plaintiff received notice in defendants' first request for production for all communications, including text messages, between plaintiff and her coworkers.  See Dkt. No. 60-8 at 4.  Plaintiff did not, at that time, produce any text messages between her and Ms. Halvorson.  After plaintiff's deposition revealed a friendship between plaintiff and Ms. Halvorson, defendant requested all communications between them.  See id.  After "six months of repeated requests from Defendant," plaintiff produced the text messages with Ms. Halvorson.  Dkt. No. 60-8 at 4.  Defendant believed the text messages plaintiff produced showed "obvious evidence" of gaps suggesting that plaintiff "deleted incriminating or unfavorable text messages between herself and Ms. Halvorson," so, on December 19, 2022, defendants served plaintiff with notice to produce her cell phone for inspection. See id.  Plaintiff "repeatedly" objected to the notice to inspect.  See id. at 5.

Defendant argues that plaintiff should be sanctioned for intentional spoliation of evidence.  See Dkt. No. 60-8 at 9-10.  First, defendant contends that plaintiff "had a clear and inexcusable obligation to preserve the text messages between her and Ms.

Halvorson" which was triggered upon her filing of the Complaint," and "further underscored as they became the center of various discovery disputes." Id. at 16. Defendant points to its first request for production of documents, dated February 2022, which informed plaintiff of her duty to produce "[a]ny and all correspondence between Plaintiff and any other person concerning the allegations in the [c]omplaint" and "between Plaintiff and any other person in connection to Plaintiff's employment with, and/or separation from, employment with Defendant." Dkt. No. 60-8 at 10-11. Defendant experienced "long delays in receiving the production of text messages between Plaintiff and Ms. Halvorson which appeared on its face to be incomplete" and "suspected that other relevant text messages were deleted from production," leading to "a notice to inspect [plaintiff's] cell phone on December 19, 2022." Id. at 11. Plaintiff received further notice to preserve the text messages when defendant filed its motion to compel inspection of the cell phone on July 20, 2023, as well as from the Court's July 2023, Decision & Order "which included explicit instructions not to delete or otherwise alter any text messages[.]" Id.

Defendant accuses plaintiff of intentionally and willfully destroying evidence, which it claims warrants an adverse inference or dismissal. See Dkt. No. 60-8 at 11. Defendant contends that the totality of the circumstances support a finding of willfulness, despite being aware of her duty to preserve and produce the text messages she "initially dodged her discovery obligations and chose not to produce any text messages between her and Ms. Halvorson despite producing text messages wither other coworkers; made a partial disclosure after "six months of repeated requests for the text messages"; the partial disclosure "upon review, suggested that some of the

relevant text messages have been deleted"; "suspiciously, in the face of subpoena" Ms. Halvorson's counsel informed defendant "that Ms. Halvorson purchased a new cell phone and was no longer in possession of her text messages with plaintiff" and "less than three weeks after Defendant filed its motion to compel Plaintiff's cellphone inspection, Plaintiff also replaced her cell phone"; and "plaintiff then proceeded to produce her new cellphone for inspection, despite an order from the Court requiring an inspection of the original phone . . . without providing any notice to Defendant or the Court that a different phone was produced for inspection." Id. at 12.  Defendant points out that, "[c]onveniently, the data from Plaintiff's old phone was not properly transferred to the new phone, and the text messages could not be recovered." Id.  Defendant takes issue with plaintiff's explanation that the text messages did not transfer because her phone was broken, contending "there can be no explanation in this digital age for failing to transfer the text messages onto Plaintiff's new phone other than because they were intentionally deleted and now unrecoverable."  Dkt. No. 60-8 at 12.

Further, efendant contends that the missing text messages were relevant to its defense.  See Dkt. No. 60-8 at 13. It argues further that plaintiff's "conduct evidences a clear intent to prevent Defendant from using the text messages in their defense." Id. at 14.  Defendant further argues that "this Court recognized the relevance of the text messages in its July 20, 2023 Order granting Defendant's motion to examine Plaintiff's old cell phone." Id.

Defendant contends that either an adverse inference at trial or dismissal is warranted because, "[d]ue to Plaintiff's intentional destruction of evidence, the relevant text messages are now unrecoverable" and such text messages were likely relevant

"and potentially harmful to Plaintiff's case."  Dkt. No. 60-8 at 15.  Defendant accuses

plaintiff of being "uncooperative and deceitful throughout the entirety of the discovery

process . . . most recently demonstrated by her refusal to attend the December 5, 2023

conference despite explicit instructions from the Court to do so."  Dkt. No. 60-8 at 15.

B.  **Plaintiff's Arguments**

Plaintiff argues that because plaintiff has

> voluntarily compli[ed] by tuning over a thousand pages of documents . . .
> including cell phone and email print outs, the turning over of the cell phone
> in her possession, and the offer to provide a prior cell phone which had been
> replaced prior to the aforementioned Order of this Court as it was no longer
> working, and her providing complete non-evasive answers in her
> deposition, the relief requested by the Defendant is inappropriate at best,
> and certainly constitutes an abuse of the discovery process designed to
> evade or delay the [case].

Dkt. No. 62 at 5.  Plaintiff accuses defendant of "perpetrat[ing] a legal game of delaying

the eventual trial in this action with spurious motion practice and requested legal hoop

jumping."  Id. at 6.  Plaintiff argues that defendant bases its motion "on a suspicion that

there might be something on the cell phone," but contends that "[t]here has been no

showing whatsoever that there is anything on the cellphone . . . that is being heldback

[sic], let alone anything contained thereon that would be beneficial to the Defendant."

Id.

Plaintiff contends that the text messages she produced between herself and Ms.

Halvorson are "complete" from the time period during her employment with defendant,

and the post- employment text messages are also complete "apart from certain

attached data that did not preserve due to their apparent length[.]"  Dkt. No. 62 at 6.

Plaintiff argues that defendant failed to show it is prejudiced "by this supposed

spoliation[.]"  Id. at 7.  Further, plaintiff asserts that defendant has failed to offer

9

evidence to demonstrate bad faith, conversely contending that the facts demonstrate that plaintiff "had done everything in her power to preserve the electronic information sought by the Defendant, going well beyond what would be expected of a layman litigant in preserving and attempting to resurrect any and all information sought by the Defendant." Id.

Next, plaintiff contends that her difficulty with her cell phone occurred and was documented in March 2023, before the Court entered its July 20, 2023, Order. Dkt. No. 62 at 7. Plaintiff contends that "when she was first trying to get the texts off the cellphone to provide in response to discovery demands, the cellphone kept crashing due to the volume of information contained therein. She contacted both AT&T and Apple to try to get the texts in question but she was told that was not possible." Id. at 7. Plaintiff contends that defendant has all text messages as "the only missing information is the attachments to the texts, which were lost due to the extent of the volume." Id. at 7-8.

Plaintiff explains that she obtained a new cell phone in March 2023, and when she turned over the new phone for a forensic review, she believed her new phone contained "all the data." Id. at 8. Plaintiff contends that she retained her old cell phone and it was offered to defendant "to see if the expert can garner any other information from the broken cellphone." Id. Plaintiff contends that she did not destroy evidence, "either purposely or negligently." Id. Finally, plaintiff accuses defendant's motion for sanctions of being frivolous. Id.

Plaintiff further argues that she should not be sanctioned for failing to provide her original phone for the forensic examination. See Dkt. No. 62 at 12. Plaintiff contends

that she provided her new cell phone when requested and offered the original phone once defendant raised concern.  See id.  Plaintiff argues that defendant offers no evidence that attachments to text messages between "the plaintiff and some third-party friend of hers are necessary in their defense" exist or are relevant.  See id.  Plaintiff provides that she as overturned "thousands of pages of written discovery, including a trove of text messages between the Plaintiff and anyone who might in any way could arguably have information relevant to the within claims."  Id.  Plaintiff noted that she was deposed for two days" and that defendant had the "opportunity to question her on all the documents produced, included any and all text massages, that the Defendant thought relevant and evidentiary."  Id. at 12-13.  Plaintiff argues that there is "absolutely no evidence whatsoever that the Plaintiff deliberately broke her phone, nor that she did so to deny the opportunity of the Defendant to probe its content."  Id.  Plaintiff "provided the phone that she understood to be compliant with the Order of the Court . . . [a]s she understood that the new phone would contain all the information on the old phone, there can be no credible allegation that the Plaintiff deliberately did anything to deny Defendant any discoverable material[.]"  Id.   Based on plaintiff's understanding that the text messages would transfer to the new phone, "there can be no credible allegation that the Plaintiff did anything deliberately or event negligently, she offered up the old phone as well when the specious issue was raised."  Id.  Plaintiff contends, "[r]ather than accepting the offer of the old cellphone . . . they rejected it, saying they did not want an old, broken cellphone.  Clearly the cellphone, and its messages are not the point."  Id.  Plaintiff opines that the "point" is to "delay[]" and "throw[] up any and all

roadblocks[.]"  Id. at 13.  Finally, plaintiff asserts that sanctions are not warranted because defendant failed to demonstrate prejudice.  See id. at 14.

## C.  **Defendant's Reply**

In reply, defendant disagrees that there is no evidence that plaintiff's conduct was intentional because "the facts and circumstances gathered in this extensive discovery battle strongly suggest that the text messages were deleted prior to Plaintiff's old cellphone allegedly breaking in 2023."  Dkt. No. 64 at 8.  Defendant argues that "it cannot be mere coincidence that the text messages which Defendant has been struggling to obtain from Plaintiff since February 2022 were produced with clear gaps indicating missing messages, then subsequently deleted from Ms. Halvorson's cloud storage when she purchased a new phone, and now deleted from Ms. Halvorson's cloud storage despite the fact that correspondence with other witnesses dating back to 2017 remain on the new phone."  Id. at 9.  Defendant argues that plaintiff provides "no facts to the contrary – instead offering inconsistent exhibits and sworn statements that further emphasize her misconduct throughout this discovery process."  Id. at 9. Defendant asserts that

> the fact that Plaintiff's old phone was broken does not exonerate Plaintiff from discovery sanctions, as she knew that the phone and its contents were at the heart of a discovery dispute.  Even if the phone in fact broke on its own, it is Plaintiff's subsequent concealment and coverup that constitutes bad faith and warrant further sanctions.  At no time did Plaintiff ever advise Defendant or the Court that she obtained a new phone, or that she intentionally provided the new phone for the forensic inspection despite the fact that it did not contain any of the old text messages.

Id.

Defendant avers that plaintiff cannot rely on arguments that she is a "'layman' or 'legally unsophisticated'" because she has been represented by counsel for the entirety

of this case.  Dkt. No. 64 at 10.  Regardless, "layman status," defendant argues, does

not excuse a party from their duty to preserve evidence.  Id.

### III.  Analysis

As a threshold issue, the Court concludes that plaintiff's conduct violates a Court

order as plaintiff was ordered to maintain the "cellular phone at issue" and "not delete or

otherwise alter any text messages" specifically so that it could undergo a forensic

examination in an effort to obtain potentially missing text messages between plaintiff

and Ms. Halvorson.  See Dkt. No. 46 at 20; FED. R. CIV. P. 37(b)(2)(a).   Whether the

cellphone's breaking and/or the deletion of the text messages was intentional or not,

plaintiff did not inform defendant or the Court of the new cellphone until November 29,

2023, after the order was entered and the forensic examination occurred.   The Court

concludes that this conduct violates the July 2023 Order.  Thus, these failures are

violative of the Court's order.[3]  Even if plaintiff had not violated a Court order,[4] the

undersigned would reach the same result.

In assessing culpability, as set forth above, defendant need not demonstrate

willfulness for this Court to implement sanctions; it need prove only simple negligence.

see Schwarz, 2009 WL 3459217 at *7 (S.D.N.Y. Oct. 27, 2009).  The Court does not

agree with defendant that there is sufficient proof that plaintiff intentionally broke her

---

[3] Although this order was entered in July 2023, and plaintiff's phone allegedly broke in March 2023, leading to her obtaining a new phone prior to the entry of the order at issue, plaintiff did not inform the Court of the broken phone or the text messages' failure to transfer until November 2023, long after the entry of the order directing preservation of this information and material.

[4] Although the Court does not rely on this violation in imposing sanctions for spoliation of evidence, the Court does note – when considering plaintiff's arguments of her overall compliance and cooperation – that plaintiff is also directly in violation of its November 17, 2023, Order that plaintiff appear in person with her attorney for the Court's December 5, 2023, conference.  See Dkt. No. 58.

cellular phone as a means to render unavailable text messages between Ms. Halvorson and plaintiff.  Even if the cellphone was broken without any misconduct on plaintiff's part, defendant also has not, and cannot, demonstrate that plaintiff intentionally deleted the text messages.  Yet, the Court agrees that there is a strong air of suspicion surrounding plaintiff's conduct given that other text messages successfully transferred to plaintiff's new phone.[5]  The suspicious nature of plaintiff's conduct specifically as it relates to her cellphone breaking and the text messages being deleted, without more, does not – in the undersigned's mind – demonstrate that plaintiff's conduct in failing to preserve the text messages to be intentional.

However, the Court finds otherwise with respect to plaintiff's conduct in failing to notify defendant or the Court that she obtained a new cellphone, advise that there was at least a possibility that all text messages did not transfer, or provide the old cellphone at the time of the forensic investigation.  Defendant has demonstrated that plaintiff, with respect to this conduct, behaved willfully. The Court agrees with defendant that it is unreasonable to argue that plaintiff was unaware that some data – specifically text messages with Ms. Halvorson – did not transfer when plaintiff obtained her new phone. At a minimum, plaintiff had a duty to inform defense counsel that she obtained a new phone prior to offering up that phone for forensic examination.  The Court agrees with defendant that even as "layman," plaintiff would have been aware – or should have been aware – when she first texted Ms. Halvorson from her new phone that the string of earlier text messages between the two were not present.  See Dkt. No. 60-1 at 4 ¶22.

---

[5]  This suspicion is strengthened by the fact that Ms. Halvorson refused to respond to the subpoena for text messages and Ms. Gamalski's advisement that Ms. Halvorson also obtained a new cellphone resulting in her no longer having access to the text messages.

Given plaintiff's knowledge at the time that the cellphone and text messages were at issue, and her later knowledge that the phone would undergo forensic examination for the exact purpose of obtaining the text messages between plaintiff and Ms. Halvorson, it is reasonable to expect a layman to know that she had a duty to alert her attorney that older text messages did not transfer to her new phone or that there could be a concern about their transfer.  Although plaintiff repeatedly paints herself as a layman and not technologically advanced, plaintiff is not appearing pro se in this matter.  Plaintiff has counsel, who is not a layperson, and who had a duty to inform her client of the obligations surrounding preservation of relevant evidence.  If plaintiff had not been so informed, the consequence of such omission should fall upon plaintiff and her counsel's shoulders, not defendant's.

To the extent plaintiff argues that (1) defendant presents no proof that the deleted text messages are relevant to the defense, (3) the text messages are irrelevant, or (3) there is no proof that defendant is prejudiced, dkt. no. 62 at 7, the Court finds such arguments to be without force.  First, plaintiff is asking of defendant to prove the impossible – to demonstrate the content of text messages that are no longer accessible and have never been provided to defendant.  The undersigned is aware that defendant bears the burden of demonstrating relevance; however, "Courts must take care not to 'hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" Residential Funding Corp., 306 F.3d at 109 (quoting Kronisch v. U.S., 150 F.3d 112, 128 (2d Cir. 1998).

This Court has already determined – and ordered the forensic examination because of this finding – that it is reasonably likely that the missing text messages contained information relevant to the defense.  See Dkt. No. 46.  Neither defendant nor the Court has any way of knowing whether any of these text messages would have been a "smoking gun," reflective of further relevant communication regarding plaintiff's employment with defendant, or entirely irrelevant.  Thus, this Court declines to conclude that the absence of proof that the missing text messages are relevant to the defense works against defendant.  It is undisputed that plaintiff regularly communicated with Ms. Halvorson about her employment with defendant and the matters underlying this lawsuit.  Thus, defendant has met its burden of demonstrating relevance.

Defendant has also sufficiently demonstrated that it is prejudiced by the missing text messages.  They appear to be irretrievable and efforts[6] to obtain the messages from Ms. Halvorson were unfruitful, with Ms. Halvorson[7] ultimately stating that she, too, obtained a new cellphone and, just like plaintiff, no longer has access to the earlier text messages with plaintiff.[8]  See Dkt. No. 40.  As this Court has already held, given the fact that plaintiff and Ms. Halvorson regularly communicated about plaintiff's employment with, and termination from, defendant, that certain text messages appear missing is suggestive that the text messages were about the matters underlying this lawsuit and would be relevant to this litigation.  As noted, defendant and the Court have no way to review the potentially missing text messages or "attachments" that have been

---

[6]   Ms. Halvorson did not comply with a subpoena.  See Dkt. No. 60-4.

[7]   Defendant points out that Ms. Halvorson is represented by the same attorney representing plaintiff. See Dkt. No. 60-1 at 2 ¶12.

[8]   No explanation was offered as to why these text messages did not transfer to Ms. Halvorson's new cellphone.

held likely to be relevant.  The Court finds that defendant is prejudiced by its inability to review or obtain them.  Defendant is also clearly prejudiced insofar as it performed the forensic review on a cellphone that did not contain the text message history between plaintiff and Ms. Halvorson.

Plaintiff repeatedly points out the fact that she has overturned significant discovery, including the text messages at issue (apart from the apparently missing messages), as evidence that plaintiff has been fully compliant with discovery and the orders of this Court.  By contrast, she seeks to paint defendant as engaging in a fishing expedition or proceeding with a fruitless arguments as a way to delay this trial, calling defendant's motion for sanctions an "abuse of the discovery process designed to evade or delay the [case]."  Dkt. No. 62 at 5.  This characterization of defendant's efforts as it relates to the text messages at issue is both untrue, unwarranted, and inappropriate.  As noted, this Court held, when it granted defendant's motion to compel, that the missing text messages appear likely to be relevant.  See Dkt. No. 46 at 10.  In so doing, it rejected plaintiff's similar arguments.  See id.  Although plaintiff may disagree with that outcome, that is the Order of this Court.  Defendant is not the bad actor plaintiff seeks to portray it to be as it relates to this motion.

The undersigned finds that sanctions are warranted in the form of plaintiff paying the costs of the expert forensic examination and certain attorney's fees associated with bringing this motion for sanctions.  Plaintiff and her counsel were advised early in the case that text messages between plaintiff and her coworkers, and later specifically between plaintiff and Ms. Halvorson, were deemed by defendant to be relevant and

later, by the Court, to be potentially relevant, and therefore, they were fully on notice that they must be preserved.

The Court finds that, here, only willfulness as it relates to the breaking of the cellphone and deletion of the text messages would warrant the more severe sanctions requested – a negative inference at trial or dismissal of the case.   However, plaintiff has been less cooperative than her opposition papers portray – indeed, (1) defendant spent several months requesting the evidence; and (2) plaintiff disregarded this Court's clear Order, Dkt. No. 58, to appear at the December 5, 2023, conference in person, and her attorney presented conflicting, meritless excuses for her failure.  See Dkt. No. 58; Text Min. Entry dated Dec. 5, 2023.  However, because it cannot be said with complete clarity that the spoliation of evidence – destruction of the cellphone and deletion of the text messages – was intentional, rather than negligent, the Court declines to impose the sanctions of a negative inference at trial or recommend dismissal of the case.  The Court also notes that, although it finds defendant was prejudiced, supra, the degree of prejudice is tempered by the fact that it is unknown whether the text messages would have contained incriminating evidence.  See, e.g., Beers v. Gen. Motors Corp., 97-CV-0482, 1999 WL 325378, at *5 (N.D.N.Y. May 17, 1999) (considering the degree of prejudice to the moving party in determining appropriate sanctions).   Thus, although prejudiced, the degree of prejudice also does not rise to the level warranting the more severe sanctions.

As to willfulness, with respect to plaintiff's failure to timely inform defendant or the Court of the existence of the new cellphone or the failure of the text messages to transfer to the new cellphone, the Court finds that defendant demonstrated willfullness.

The Court agrees that despite plaintiff's claims of her layman status, plaintiff was aware, or reasonably should have been aware, when she texted Ms. Halvorson from her new phone on March 16, 2023, that the prior text messages did not transfer.  See Dkt. No. 60-2 at 5. ¶22.  She was aware of her duty to surrender her phone for examination of text messages specifically between plaintiff and Ms. Halvorson as far back as February and December 2022.  See Dkt. Nos. 60-2 at 8 ¶15, 60-3.  Plaintiff was aware that her cellphone was "experiencing problems" and that her cell phone was at issue in this case.  See Dkt. No. 62 at 7.  This notice means that plaintiff had a responsibility to inform her attorney that her phone was "experiencing problems" at the time the problems arose and of her plan to obtain a new cellphone, and the attorney would have a duty to inform defendant and the Court and allow them to decide whether the forensic examination should include the new phone, old phone, or both.  Plaintiff had the responsibility to inform her attorney and defendant when she saw that the text messages with Ms. Halvorson did not appear to transfer to her new phone.

Regardless of the reason for the text messages failing to transfer, her duty to inform her attorney and her attorney's duty to inform defendant that plaintiff obtained a new phone does not require advanced knowledge of phone technology, data transfer, litigation, or forensic investigation.  The failure to inform the defendant and the Court of her old cellphone's "issues" and that she obtained a new phone, which led to defendant spending a significant amount of time and resources in performing a fruitless examination of the new phone and in bringing this motion, is sanctionable conduct.

## IV.  **Conclusion**

Defendant's motion for sanctions, Dkt. No. 60, is granted in part.  Plaintiff is ordered to pay the costs of the forensic examination and related expenses, $6,346.46, and half of the amount of attorney's fees, totaling $26,270.60.[9]  See Dkt. Nos. 60, 60-6, 60-7.[10]  Plaintiff is to make this payment within a reasonable time or pursuant to a payment plan agreeable to defendant.[11]  The undersigned concludes that an award of half of the amount of attorney's fees associated with this motion and related conferences is warranted given that the Court has found that it is not clear that plaintiff's conduct of destruction of the cell phone or deletion of the text messages was intentional but that the failure to inform defendant and the Court when she obtained a new phone and when she saw that there were no prior texts from Ms. Halvorson was intentional. Defendant's motion, is otherwise denied.[12] Wherefore, it is hereby

**ORDERED**, that defendant's motion for sanctions, Dkt. No. 60, is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED**, that plaintiff is to pay to defense counsel the full cost of the forensic examination and related expenses, $6,346.46, and half of the amount of attorney's fees,

---

[9]  The total amount of attorney's fees is $52,541.20.  See Dkt. No. 60-6.  Although the sanction awarded herein is not insignificant, the undersigned reminds plaintiff that it provided her attorney an opportunity, at the December 5, 2023, conference to reimburse defendant for the cost of the forensic examination, which would have been $6,346.46.  See Dkt. No. 60-6.  Plaintiff's attorney declined, necessitating this motion for sanctions and the significant attorney's fees.

[10]  The Court declines to include the cost of a reply in these sanctions.  Defendant anticipated spending 20 hours of attorney time if it were "forced to file a Reply and/or appear in Court for a hearing on this matter," for an amount of approximately $8000.  Dkt. No. 60-1 at 5 n.29.  However, upon submitting a reply defendant provided no "breakdown" of these expenses or actual time spent on the reply nor any support to demonstrate that 20 hours of time on a 15-page reply, which is largely redundant of the arguments in the original motion, is not excessive.

[11]  The Court is cautiously hopeful that counsel for both parties can reach an agreement as to the definition of "reasonable" without Court intervention.

[12] "If this case proceeds to trial, the district judge may 'consider any motions in limine that [defendant] may bring and can consider the conduct of [plaintiff] discussed herein.'"  Morin, 2010 WL 2771826, at *7 n.15.

of $26,270.60, for a total amount of $32,617.06, within a reasonable time and/or pursuant to a payment plan deemed agreeable by all parties.

     **IT IS SO ORDERED**.

    Dated: June 17, 2024
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge